IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

SHERRI SCHULTHEIS, DIANE REED,
and KATHERINE WHEELER,

Plaintiffs,

v.

COMMUNITY HEALTH SYSTEMS, INC.,
a Delaware Corporation and MARION
HOSPITAL CORPORATION, d/b/a HEARTLAND
REGIONAL MEDICAL CENTER,

Defendants.                                    No. 11-0435-DRH

MEMORANDUM and ORDER

HERNDON, Chief Judge:

I. Introduction and Background

Pending before the Court is defendant Community Health Systems, Inc.'s motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction (Doc. 12). Plaintiffs oppose the motion (Doc. 18). Based on the following, the Court denies the motion.

On June 22, 2011, plaintiffs Sherri Schultheis, Diane Reid and Katherine Wheeler filed a five-count first amended complaint against defendants Community Health Systems, Inc. ("CHSI") and Marion Hospital Corporation, d/b/a Heartland Regional Medical Center ("Marion Hospital") (Doc. 5). Plaintiffs' first amended complaint is brought pursuant to the Fair Labor Standards Act of 1938, as amended,

29 U.S.C. § 201 et seq. ("FLSA") and state common law claims for violation of the

Illinois Minimum Wage Law, 820 ILCS 105/1 et seq. ("IMWL"), the Illinois Wage

Payment and Collection Act, 820 ILCS 115/1 et seq. ("IWPCA"), the Illinois

Whistleblower Act, 740 ILCS 174/1 et seq. ("IWA") and breach of contract.  Plaintiffs

were employed as registered nurses in the labor and delivery department at Marion

Hospital in Marion, Illinois.

## II.  Motion to Dismiss Standard

When personal jurisdiction is challenged under Federal Rule of Civil Procedure

12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction over a

defendant.  *Purdue Research Found. v. Sanofi–Syntholabo, S.A.*, 338 F.3d 773, 782

(7th Cir.2003) (citing *Central States, S.E. & S.W. Areas Pension Fund v. Reimer

Express World Corp.*, 230 F.3d 934, 939 (7th Cir.2000)).  If the issue of personal

jurisdiction is raised by a motion to dismiss and decided on the written materials

rather than an evidentiary hearing, the plaintiff need only make a prima facie showing

of jurisdictional facts.  *Id.*  Thus, the Court must "take as true all well-pleaded facts

alleged in the complaint and resolve any factual disputes in favor of plaintiff."

*Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010)(citing *Purdue Research

Found.*, 338 F.3d at 782).

Under Illinois law, the long-arm statute permits personal jurisdiction over a

party to the extent allowed under the due process provisions of the Illinois and

United States constitutions.  735 ILCS 5/2–209(c); *Hyatt Int'l Corp. v. Coco*, 302 F.3d

707, 714 (7th Cir. 2002); *Central States, S.E. & S.W. Areas Pension Fund v. Reimer*

*Express World Corp.,* 230 F.3d 934, 940 (7th Cir. 2000).  Therefore, whether the Court has jurisdiction over a defendant depends on whether such jurisdiction is permitted by federal and state constitutional standards.

The Illinois Constitution's due process guarantee, Ill. Const. art. I, § 2, permits the assertion of personal jurisdiction "when it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Rollins v. Ellwood,* 141 Ill.2d 244, 152 Ill.Dec. 384, 565 N.E.2d 1302, 1316 (Ill.1990).  When interpreting these principles, a court may look to the construction and application of the federal due process clause. *Id.*  In fact, the Seventh Circuit Court of Appeals has suggested that there is no operative difference between Illinois and federal due process limits on the exercise of personal jurisdiction. *Hyatt Int'l Corp. v. Coco,* 302 F.3d 707, 715 (7th Cir.2002) (citing *RAR, Inc. v. Turner Diesel Ltd.,* 107 F.3d 1272, 1276 (7th Cir.1997)).  The Court sees nothing in this case indicating that in this particular situation the federal and state standards should reach a different result. Therefore, if the contacts between the defendant and Illinois are sufficient to satisfy the requirements of federal due process, then the requirements of both the Illinois long-arm statute and the Illinois Constitution have also been met, and no other inquiry is necessary.

The Due Process Clause of the Fourteenth Amendment limits when a state may assert personal jurisdiction over nonresident individuals and corporations. *See Pennoyer v. Neff,* 95 U.S. 714, 733, 24 L.Ed. 565 (1877), *overruled on other*

*grounds by Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977).

Under federal due process standards, a court can have personal jurisdiction over a

defendant only if the defendant has "certain minimum contacts with [the forum state]

such that the maintenance of the suit does not offend 'traditional notions of fair play

and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316,

66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61

S.Ct. 339, 85 L.Ed. 278 (1940)).  The defendant must have purposefully established

such minimum contacts with the forum state such that it "should reasonably

anticipate being haled into court there," *World–Wide Volkswagen Corp. v. Woodson,*

444 U.S. 286, 297 (1980), because it has "purposefully avail[ed] itself of the privilege

of conducting activities within the forum State, thus invoking the benefits and

protections of its laws," *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2

L.Ed.2d 1283 (1958); *Burger King Corp. v. Rudzewicz,* 474–75 (1985); *see J.*

*McIntyre Mach., Ltd. v. Nicastro,* ——U.S. ——, ——, 131 S.Ct. 2780, 2788, 180

L.Ed.2d 765 (2011) (Kennedy, J., plurality opinion).  In deciding whether exercising

jurisdiction offends traditional notions of fair play and substantial justice, the Court

may also consider "the burden on the defendant, the interests of the forum State, and

the plaintiff's interest in obtaining relief." *Asahi Metal Indus. Co. v. Superior Court*

*of Cal.,* 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

What this standard means in a particular case depends on whether the plaintiff

asserts "general" or "specific" jurisdiction.  Specific jurisdiction refers to jurisdiction

over a defendant in a suit arising out of or related to the defendant's contacts with the

forum.  *Hyatt Int'l Corp. v. Coco,* 302 F.3d 707, 716 (7th Cir. 2002) citing

*Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 nn. 8, 9

(1984)).  General jurisdiction, on the other hand, may exist even in suits that do not

rise out of or relate to the defendant's contacts so long as the defendant has

"continuous and systematic" contacts with the forum state. *Hyatt,* 302 F.3d at 713;

*Helicopteros Nacionales,* 466 U.S. at 416.

Ordinarily, the jurisdictional contacts of a subsidiary corporation are not

imputed to the parent corporation. *Purdue Research Found. v. Sanofi–Syntholabo,*

*S.A.,* 338 F.3d 773, 788 n. 17 (7th Cir.2003) (citing *Central States, S.E. & S.W.*

*Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943–44 (7th

Cir.2000)).  "[C]onstitutional due process requires that personal jurisdiction cannot

be premised on corporate affiliation or stock ownership alone where corporate

formalities are substantially observed and the parent does not exercise an unusually

high degree of control over the subsidiary."  *Reimer Express,* 230 F.3d at 943.

However, where corporate formalities are not observed such that piercing the

corporate veil is warranted or where a parent dominates the subsidiary, a court may

have personal jurisdiction over a parent based on the subsidiary's contacts.  *See,*

*e.g., id.* at 945.  The same is true where the subsidiary is acting solely as the parent's

agent, and the parent is simply doing business through its subsidiary to shield itself

from liability.  *Old Orchard Urban Ltd. P'ship v. Harry Rosen, Inc.,* 389 Ill.App.3d

58, 328 Ill.Dec. 540, 904 N.E.2d 1050, 1059 (Ill.App.Ct. 2009) (citing *Maunder v.*

*De Havilland Aircraft of Canada, Ltd.,* 102 Ill.2d 342, 80 Ill.Dec. 765, 466 N.E.2d

217, 222 (Ill. 1984); *Alderson v. Southern Co.,* 321 Ill.App.3d 832, 254 Ill.Dec. 514,

747 N.E.2d 926, 944 (Ill.App.Ct. 2001)).

Where a plaintiff claims a parent company is subject to a court's jurisdiction

by virtue of its subsidiary's contacts because it exercised extraordinary control over

the subsidiary, the court considers factors including:

> (1) whether officers or directors are the same; (2) how much control is
> exerted by parent over daily affairs of its subsidiary; (3) whether parent
> arranges financing for and capitalization of subsidiary; (4) whether
> separate books, tax returns, and financial statements are kept; (5)
> whether parent holds its subsidiary out as agent; and (6) the method of
> payment made to parent by subsidiary.

*Bray v. Fresenius Med. Care Aktiengesellschaft Inc.,* No. 06 C 50197, 2007 WL

7366260, at *6 (N.D.Ill.2007) (citing *Gruca v. Alpha Therapeutic Corp.,* 19

F.Supp.2d 862, 867 (N.D.Ill.1998)). Control that is consistent with investor

status—that is, monitoring the subsidiary's performance, supervising the subsidiary's

finance and capital budget decisions, and articulating general policies—does not rise

to the level necessary to impute the subsidiary's jurisdictional contacts to the parent.

16 James Wm. Moore *et al., Moore's Federal Practice* § 108.42[3][b] (3d ed.2011);

see *United States v. Bestfoods*, 524 U.S. 51, 72, 118 S.Ct. 1876, 141 L.Ed.2d 43

(1998).  A controlling shareholder "is entitled to ordain [a subsidiary's] officers and

directors, influence executive compensation, approve budgets, gather information

about corporate performance, and receive distributions of subsidiary profits." *In re

Chocolate Confectionary Antitrust Litigation ("In re Chocolate"),* 674 F.Supp.2d

580, 599–600 (M.D.Pa.2009).  "These activities typify standard parent-subsidiary interactions and do not reflect daily, operational control that is the sine qua non of an alter ego relationship." *Id.* at 600.

### III.  Analysis

CHS argues that the Court lacks personal jurisdiction over it as it is a Delaware holding company with no employees, offices or real property in Illinois. Further, it contends that it does not transact business in Illinois and does not maintain control over Marion Hospital.  It asserts that its only relationship to Marion Hospital is as a remote, indirect stockholder.  CHS further argues that it exists and operates as a separate and distinct corporate entity that took no action relevant to the allegations in plaintiffs' first amended complaint.  Plaintiffs counter that the Court has both general and specific personal jurisdiction over CHS because CHS exercised its right to dictate the employment policies to by utilized by Marion Hospital; that it transacts and does business in the state of Illinois and that it is plaintiffs' joint employer.

Here, the Court finds that plaintiffs have made a prima facie showing that the Court has personal jurisdiction over CHS. Clearly, the personnel policy seems to be evidence of the control in the nature argued by plaintiffs.  The plaintiffs were required to be bound by compliance with the CHS Code of Conduct.  Also, the Marion Hospital's personnel policy contain the CHS logo.  Plaintiffs' immediate supervisor at all relevant times in the case was Maria McCartghy-Webb whose email address used for all employment communications was: Maria McCarthy-

Webb/Marion/CHS@CHS.  Similarly, the Human Resource Manger's work email was: Ed Daech/Marion/CHS@CHS.   Furthermore, the personnel policy contained the following:

(1) A memorandum with the CHS logo from Bob Horrar, Vice President of Administration, CHS PSC, to Chief Executive, Operating, Financial and Nursing Officers, and Human Resource Directors states: "these policies and procedures must be followed as written absent an approved one time or permanent exception.  Any exception requested must be submitted using the attached form;"

(2) Section D.1 Wage and Salary Administration, 4.0 states that "each job shall be given a CHS standard position code (see Form 40), grade and status;" 6.0 Wage Increases talks about "[e]ach facility's annual compensation budget ....;" and 14.0 Transfers references lateral reassignments *between* CHS facilities;

(3) Section D.5 Workweek/Overtime addresses the FLSA and state wage and hours laws and 8.0 Procedures discusses "employees who work at more than one CHS facility in a non-exempt capacity" and the need to aggregate all the hours work at all the entities for computing overtime;

(4) Section D.7 Paychecks, 3.0 E-Stub addresses how pay stubs are handled at most facilities;

(5) Section D.10 Salary Advances/Loans directs all facilities to use a single collection agency chosen by CHS to collect monies owed to the facilities from current or former employees; and

(6) Section D.13 Break/Meal Periods, Section 8.0 contains Table 1 which contains

State Mandated Meal Periods for 13 states and the personnel policy dictates that the

state requirements must be displayed at each facility.

A review of the record (without taking judicial notice of the website), the Court

concludes that there is enough evidence to establish a reasonable plausibility of a

cause of action against CHS based on the control it exerts over Marion Hospital.  At

this stage of the litigation, the Court finds that plaintiffs have sustained their burden

of establishing that the Court has personal jurisdiction over CHS.  Further, the Court

finds that exercising personal jurisdiction over CHS does not offend due process.

### IV.  Conclusion

Accordingly, the Court **DENIES** defendant's motion to dismiss (Doc. 12).

**IT IS SO ORDERED.**

Signed this 26th day of January, 2012.

David R. Herndon
2012.01.26
15:31:18 -06'00'

**Chief Judge**
**United States District Court**